Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/08/2018 09:09 AM CDT

Willie Moss, also known as Lamont Kirkland,
appellee, v. C&A Industries, doing business
as Aurstaff Temporary Agency,
employer, appellant.

___ N.W.2d ___

Filed May 8, 2018.    No. A-17-465.

1. **Evidence: Records: Appeal and Error.** A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered.
2. **Judicial Notice: Records.** Papers requested to be judicially noticed must be marked, identified, and made a part of the record.
3. **Judicial Notice: Appeal and Error.** The trial court's ruling should state and describe what it is the court is judicially noticing. Otherwise, a meaningful review of its decision is impossible.
4. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.
5. ____: ____. Findings of fact made by the Workers' Compensation Court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous.
6. **Workers' Compensation: Evidence: Appeal and Error.** When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence.

7. **Workers' Compensation: Appeal and Error.** An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.

8. **Workers' Compensation: Proof.** To obtain a modification of an award, an applicant must prove, by a preponderance of evidence, that the increase or decrease in incapacity was due solely to the injury resulting from the original accident.

9. ____: ____. To obtain a modification of a prior award, the applicant must prove there exists a material and substantial change for the better or worse in the condition—a change in circumstances that justifies a modification, distinct and different from the condition for which the adjudication had been previously made.

10. **Workers' Compensation.** Whether an applicant's incapacity has increased under the terms of Neb. Rev. Stat. § 48-141 (Reissue 2010) is a finding of fact.

11. **Workers' Compensation: Expert Witnesses.** Although a claimant's medical expert does not have to couch his or her opinion in the magic words "reasonable medical certainty" or "reasonable probability," the opinion must be sufficient to establish the crucial causal link between the claimant's injuries and the accident occurring in the course and scope of the claimant's employment.

12. **Expert Witnesses: Physicians and Surgeons: Appeal and Error.** An appellate court examines the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole.

13. **Workers' Compensation: Expert Witnesses: Physicians and Surgeons.** The Workers' Compensation Court is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony.

14. ____: ____: ____. Resolving conflicts within a health care provider's opinion rests with the Workers' Compensation Court, as the trier of fact.

15. **Workers' Compensation: Evidence: Appeal and Error.** If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court.

16. **Workers' Compensation: Proof.** To establish a change in incapacity under Neb. Rev. Stat. § 48-141 (Reissue 2010), an applicant must show a change in impairment and a change in disability.

17. **Workers' Compensation: Words and Phrases.** In a workers' compensation context, impairment refers to a medical assessment, whereas disability relates to employability.

Appeal from the Workers' Compensation Court: Daniel R. Fridrich, Judge. Reversed and remanded for further proceedings.

Jill Hamer Conway, of Prentiss Grant, L.L.C., for appellant.

Terrence J. Salerno and Danny C. Leavitt for appellee.

Moore, Chief Judge, and Inbody and Bishop, Judges.

Moore, Chief Judge.

## INTRODUCTION

C&A Industries, doing business as Aurstaff Temporary Agency (the Appellant), appeals from the order of the Nebraska Workers' Compensation Court which entered a further award of benefits to Willie Moss, also known as Lamont Kirkland (Kirkland). For the reasons set forth herein, we reverse, and remand for further proceedings.

## BACKGROUND

Kirkland was 60 years old at the time of the second modification trial in February 2017. In July 2008, he was working for the Appellant, a temporary agency, and was employed as a laborer. On July 23, while engaged in the duties of his employment, he suffered multiple cuts and abrasions to his legs and arms, trauma to his head, a broken tooth, cervical and lumbar strain, trochanteric bursitis, and a medial meniscus tear and strain of the left knee as a result of an accident when a load of "angle iron" fell from an overhead crane onto him. He has not returned to work in any capacity since July 2008. Kirkland underwent conservative treatment which alleviated some symptoms, but when surgery was recommended for his left knee injury, the Appellant refused to authorize further medical treatment.

Kirkland sought workers' compensation benefits, filing a petition in the compensation court on January 28, 2009. He alleged that on July 23, 2008, he sustained injuries in an

accident arising out of and in the course and scope of his employment with the Appellant. Specifically, he alleged that he was performing his regular job duties when a "Truss Angle" shifted and fell on him, causing him to sustain injuries to his "head, neck, back, arms, shoulders, knees, chest, legs and feet."

On December 10, 2009, the compensation court entered an award, finding Kirkland was injured as described above. At the time of the award, Kirkland remained temporarily totally disabled due to his left knee injury. The court noted medical evidence from Dr. Nicholas Steier (Kirkland's family physician) and Dr. Mark Pitner (an orthopedic surgeon Kirkland was referred to by Steier), suggesting that "the failure to address the left knee injury ha[d] caused a gait disturbance which aggravated [Kirkland's] low back and hip which ha[d] become symptomatic." The court awarded temporary total disability, as well as future indemnity benefits, and it ordered the Appellant to pay certain medical expenses and future medical expenses reasonably necessary for evaluation and treatment of Kirkland's multiple injuries, including but not limited to the recommended left knee arthroscopic surgery.

Following the first trial, Kirkland received the arthroscopic procedure on his left knee, but as a postoperative complication, he developed deep vein thrombosis and a pulmonary embolism, which necessitated further hospitalization.

On October 20, 2010, the Appellant filed a petition to modify in the compensation court, alleging that Kirkland had sustained a material and substantial change in his condition since the entry of the previous award that warranted a change to or reduction in benefits owed by the Appellant. Kirkland answered, denying the assertion of a change in his physical condition, and filed a counterclaim, alleging that the Appellant had failed to comply with the award and refused to pay many of his medical bills as they were incurred.

The compensation court entered a further award on June 17, 2011. The court noted that it had reviewed the medical

evidence as a whole and Kirkland's testimony, which it found credible. The court found that the scheduled member injury to Kirkland's left knee adversely affected him such that loss of permanent earning power could not be fairly assessed without considering the impact of the member injury upon his employability. The court determined that Kirkland's scheduled member injury and whole body injuries combined to render him permanently totally disabled. The court awarded permanent indemnity benefits, including future indemnity benefits; ordered the Appellant to pay certain specified medical expenses; and also ordered the Appellant to pay future medical expenses reasonably necessary for evaluation and treatment of Kirkland's July 2008 injuries.

On October 12, 2016, Kirkland filed the petition to modify at issue in this appeal. He alleged that since entry of the award and further award, his "treating physicians have evaluated and treated [his] right knee and determined he requires a total knee arthroplasty." He alleged a material and substantial increase in incapacity due solely to his compensable injuries, entitling him to modification of the previous awards. He sought an order requiring the Appellant to pay for "the treatment and medication necessary to address [his] work related condition" and awarding him such workers' compensation benefits to which he was entitled, including an award of penalties and attorney fees.

The Appellant answered, denying that treatment of Kirkland's right knee was compensable. The Appellant asserted that the previous awards did not find Kirkland sustained a work-related right knee injury and did not award future medical care for a right knee injury. The Appellant also alleged that Kirkland's claims with regard to his right knee were barred by res judicata.

Trial was held before the compensation court on February 28, 2017. The court heard testimony from Kirkland and received various medical records and other documentary exhibits offered by the parties.

[1-3] We note that the Appellant references a September 2009 deposition of Steier in its brief on appeal. This deposition was not an exhibit offered directly as evidence at the current modification trial and was presumably offered at a prior trial. At the current trial, the Appellant asked the compensation court to take judicial notice of all exhibits offered and received at both prior trials and also asked the court to take judicial notice of specific pages from certain, specific, and previously offered exhibits. The court took judicial notice as requested by the Appellant, but the only judicially noticed exhibits included in the record on appeal were those exhibits from which Appellant requested the court to take judicial notice of specific pages. Steier's 2009 deposition was not one of those exhibits. A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017). Papers requested to be judicially noticed must be marked, identified, and made a part of the record. *Id.* The trial court's ruling should state and describe what it is the court is judicially noticing. *Id.* Otherwise, a meaningful review of its decision is impossible. *Id.* Because Steier's 2009 deposition was not included in the record, we are unable to review the Appellant's assertions with respect to it.

At the February 2017 modification trial, Kirkland testified about his injuries and the history of his treatment. Kirkland testified that the level of pain in his right knee at the time of his accident and injury in July 2008 "started off as aching" and then his right knee condition "developed until the point where [he] would have popping as well as almost the same type of procedure [sic] as [his] left knee." Kirkland testified that although one of his treating doctors in 2008 noted he might have some damage to his right knee, no doctor told him prior to 2016 that he needed surgery on his right knee. He also noted that at some point, Pitner told him, "'Your knee is starting to wear down from the constant use of it.'" Pitner further

told Kirkland, "'Because you're putting more strain on it by using it as your only support . . . it's wearing down.'"

Kirkland underwent left knee replacement surgery in April 2016. Kirkland indicated that since his left knee replacement surgery, he has been relying primarily upon his right leg when he walks. He testified further that as he went through rehabilitation following his left knee replacement surgery, he favored his right knee "to hold [him] up" and that "it got to the point" where Pitner recommended surgery on the right knee. Kirkland testified that he wanted to undergo that surgery and that he was asking the court to order payment for that surgery.

Kirkland was on pain and antidepressant medication at the time of trial. Despite having formerly been "a world class fighter" and "involved in that kind of activity," he had never been on pain medication or antidepressants prior to his July 2008 work accident and had only been to the hospital once "to get an examination to fight against [sic] foreign countries." Kirkland testified that he had not suffered any new injuries since 2008.

Kirkland's trial testimony is consistent with his answers to interrogatories, served on the Appellant in March 2009, and his testimony in a January 2017 deposition that were received into evidence at trial. In Kirkland's interrogatory answers, he stated that he sustained injuries to "his head, neck, back, arms, shoulders, *knees*, chest, legs and feet" in the July 2008 accident. (Emphasis supplied.) In his deposition, Kirkland testified he had right knee pain on the day of the accident. He testified further that he showed both of his knees to his work supervisor on the Monday following the accident and that his right knee was swollen. Kirkland testified that he continued to have pain in his right knee but that it was "overshadowed" by the pain in his left knee.

Kirkland's trial testimony is also supported by the medical evidence received at trial, and although we have not noted every such complaint in our analysis, the medical evidence

reflects continuing complaints of right knee pain and/or popping since the time of the July 2008 accident. For example, in 2008, Kirkland complained of bilateral knee popping during aquatic physical therapy on August 22. He complained of right knee pain during a defense medical examination by a doctor on December 9, but the doctor found the examination of Kirkland's knee otherwise "not remarkable" with "no specific physical findings."

The medical records show further complaints about Kirkland's right knee in 2009 and 2010. In January 2009, Pitner recorded that Kirkland complained of right knee pain. During a visit to the "Rejuvenation Center" in March, Kirkland noted that his right knee "pops." In October 2010, when he visited another medical clinic, Kirkland marked both his left and right knee on a pain diagram.

Kirkland's complaints of right knee pain continued in 2011 and 2012. He complained of bilateral knee pain to Pitner in July 2011 and was diagnosed with "[b]ilateral degenerative arthritis of the knees." In his notes from that visit, Pitner stated, "The right knee really was not included in [Kirkland's] previous work comp injury and was not a part of discussion today. [Kirkland] does know, however, that it is fairly worn as well." Pitner discussed "knee replacement" with Kirkland at that time, but it is unclear from Pitner's notes whether they discussed replacement of both knees or just the left knee. Pitner's notes do show, however, that Kirkland's left knee bothered him more at that time. Pitner administered cortisone injections into both of Kirkland's knees in September 2012 due to his complaints of bilateral knee pain.

Kirkland continued to treat with Pitner from late 2012 through April 2016 when Pitner performed replacement surgery on Kirkland's left knee. During that time, Kirkland complained of bilateral knee pain. In September 2013, Pitner again administered cortisone injections into both of Kirkland's knees. Pitner also injected both knees on various occasions between April 2014 and January 2016.

On April 11, 2016, Pitner performed a "left total knee arthroplasty" on Kirkland. During a followup visit 2 weeks after the left knee surgery, Kirkland stated he wanted to "begin working on getting prior authorization through workmen's compensation for the right total knee arthroplasty." Pitner administered a cortisone injection to Kirkland's right knee at that visit.

Causation opinions from three doctors concerning Kirkland's right knee were received into evidence at trial. The first causation opinion is from Dr. Erik Otterberg, who conducted an independent medical examination regarding Kirkland's right knee on September 2, 2016. In his report, Otterberg responded to certain questions. As to whether Kirkland's right knee injury was a preexisting condition, related to the July 2008 accident, or caused by a subsequent condition or accident, Otterberg responded that he did not have any documentation of any preexisting right knee problems. He found no mention of the right knee problem initially after the accident, but noted the medical examination of Kirkland in December 2008, in which a doctor evaluated Kirkland's right knee and noticed some right knee pain. With regard to causation, Otterberg stated, "With [Kirkland's] denying right knee problems beforehand and no documentation of pre-existing right knee conditions, I would conclude that this could be related to the July 23, 2008 event with some probability." In response to the question of whether Kirkland's right knee condition represented a material and substantial increase in incapacity "since June 17, 2011 due solely to the injury of July 23, 2008," Otterberg stated, "The progression of the right knee pain and arthritis would progress from the time of the initial event to current." And, as to whether any right knee replacement surgery would be reasonably medically necessary as a result of the July 2008 accident or due to a preexisting condition, regardless of the July 2008 accident, he stated, "Again, with [Kirkland's] denying having any knee problems prior to this and with no documentation of treatment for right knee

problems before this, I think that it is somewhat reasonable to equate his need for a [right] knee replacement with the event on July 23, 2008."

The next causation opinions are from Steier, who also treated Kirkland during the period when Pitner was treating Kirkland. On September 21, 2016, Steier wrote in a letter addressed "To Whom It May Concern":

Kirkland is a patient under my care who suffered a work comp injury on July 23, 2008. Since that time he has had neck pain, back pain, shoulder pain and bilateral hip and knee pain. He underwent left total knee arthroplasty. He continues with treatment for his neck, back, shoulder and hip pain. He was scheduled for right total knee arthroplasty, but apparently work comp is questioning whether this right knee pain is work related. I reviewed his medical records. I see documentation in the medical records that he started developing right knee pain as far back as August 9, 2010. It is reasonable to assume and one could argue that the right knee pain developed as a direct result of his work comp injuries as his gait and weightbearing changed which may have stressed his right knee.

Then on January 26, 2017, Steier issued a checkbox type of report in which he opined "with a reasonable degree of medical probability" that Kirkland's injuries to his neck, back, head, right knee, and left knee and his hip pain were the result of the work-related accident of 2008; that the medical care and treatment he rendered to Kirkland as a result of these injuries was reasonable and necessary; that Kirkland was at maximum medical improvement for all injuries except his right knee for which surgery was still pending; and that Kirkland would need future medical care and treatment as a result of all of these injuries.

The final relevant causation opinion is found in a February 2, 2017, letter Pitner wrote to Kirkland's counsel:

This response is . . . to your letter faxed, dated 01/26/17, requesting a narrative report with regard to causality

and a potential Worker's Compensation case for the left [sic] knee. [Kirkland] has been seen in the office and treated for an injury to the right knee, which was determined to be related to an injury at work. I have also treated him for progressive degenerative disease of the left knee and made the recommendation with proceeding with joint replacement.

On March 29, 2017, the compensation court entered a further award of benefits to Kirkland. The court first addressed the Appellant's assertion that Kirkland's claim was barred by res judicata. The court noted Kirkland's claims of right knee injury in the 2008 accident and evidence about Kirkland's right knee injury. The court also noted that the original award did not find that Kirkland suffered a right knee injury in the 2008 accident. Because Kirkland claimed to have injured his right knee in the 2008 accident and because an injury to Kirkland's right knee was not included in the 2009 award, the court determined that Kirkland was barred from relitigating that issue pursuant to the doctrine of res judicata or issue preclusion.

The compensation court determined, however, that Kirkland was not precluded from seeking modification of the original award. The court stated that Kirkland could recover benefits for a right knee injury "if he can prove his right knee injury/condition stems from his compensable left leg injury, low back injury, neck injury or hip injury" and if he proves the requirements for a modification under Neb. Rev. Stat. § 48-141 (Reissue 2010). The court outlined Kirkland's testimony and the medical evidence about Kirkland's right knee issues, and it noted and analyzed the causation opinions of Pitner, Otterberg, and Steier.

Given the detail of the compensation court's analysis of the causation opinions, we reproduce it here as follows:

The opinions [of Pitner, Otterberg, and Steier] are the extent of the "causation" opinions offered at trial. Not one doctor opined [Kirkland's] right knee condition was

unrelated to the accident on July 23, 2008, although there are problems with each of the aforementioned opinions. The Court will address each opinion individually.

Initially, . . . Pitner's opinion appears to causally relate [Kirkland's] right knee injury to the accident on July 23, 2008 based upon the theory that his right knee was actually hurt in the accident. If that is the case, that opinion is legally irrelevant as this Court has concluded that [Kirkland] is barred from relitigating that issue. In complete candor, however, it is unclear how . . . Pitner relates [Kirkland's] right knee problem to the accident on July 23, 2008. That lack of clarity does not aid [Kirkland] given it is [Kirkland's] burden to prove his right knee injury was solely caused by the injuries suffered to either his hip, low back, neck or left knee. This Court concludes that . . . Pitner's opinion does not carry [Kirkland's] burden of proof given the lack of clarity and certainty about what exactly his opinion is.

The same criticism can be lodged towards . . . Otterberg's opinion. He does not identify how [Kirkland's] right knee injury is causally related to the accident on July 23, 2008, but he too seems to opine the right knee was initially injured in the accident on July 23, 2008. That opinion would also be legally irrelevant given the Court's ruling on res judicata. Furthermore . . . Otterberg employs the word "could" when providing his opinion, and it is well recognized that expert medical testimony based upon "could," "may," or "possibly" lacks the definiteness required to support an award from the Workers' Compensation Court. . . . Consequently, the Court finds that . . . Otterberg's opinion is insufficient to carry [Kirkland's] burden.

. . . Steier's opinion has some of the same problems as those of . . . Otterberg. . . . Steier also uses the words "could" and "may" when stating his opinion. On the other hand, he at least identifies that [Kirkland's]

right knee problem[] was caused by [Kirkland's] altered weight bearing and gait. Moreover, . . . Steier cleaned up the deficiencies created by using the words "could" and "may" by issuing his follow-up check box report in which he stated [Kirkland's] right knee injury was the result of the accident on July 23, 2008. Ultimately, the Court finds . . . Steier's opinion to be legally sufficient to carry [Kirkland's] burden of proof and persuasion particularly when considering the Nebraska Supreme Court's decision in [*Hohnstein v. W.C. Frank*], 237 Neb. 974, 468 N.W.2d 597 (1991). In [*Hohnstein*], the Nebraska Supreme Court affirmed the trial court's modification of an award where the only expert opinion to support the claimant's case was one in which [the doctor] testified that the claimant had problems after the fall "and one would assume they were causally related." [*Id.*] at 983, 468 N.W.2d at 604.

The Court finds [Kirkland] suffered a material and substantial change in his physical condition for the worse due solely to the injuries suffered by him in the accident on July 23, 2008. The Court finds [Kirkland's] right knee injury was caused by his altered gait and weight bearing caused by the original injuries suffered in the accident on July 23, 2008. The Court relies upon the opinion of . . . Steier to so find.

The compensation court ordered the Appellant to pay for the right knee total replacement recommended by Pitner and for all followup care necessitated by the surgery. The court also ordered the Appellant to pay certain medical bills and denied Kirkland's request for attorney fees. The Appellant subsequently perfected this appeal.

## ASSIGNMENTS OF ERROR

The Appellant asserts that the compensation court erred in (1) finding Kirkland experienced a material and substantial change for the worse in his right knee condition distinct

and different since the prior trials and awards due solely to his July 2008 accident and (2) adopting medical opinions in support of its ruling that did not meet the required burden of proof.

## STANDARD OF REVIEW

[4-7] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017). Findings of fact made by the Workers' Compensation Court have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Id.* When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Id.* An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Kohout v. Bennett Constr.*, 296 Neb. 608, 894 N.W.2d 821 (2017).

## ANALYSIS

The Appellant asserts that the compensation court erred in finding Kirkland experienced a material and substantial change for the worse in his right knee condition distinct and different since the prior trials and awards due solely to his July 2008 accident and adopting medical opinions in support of its ruling that did not meet the required burden of proof.

Under § 48-141, an award of the compensation court may be modified:

(1) At any time by agreement of the parties with the approval of the Nebraska Workers' Compensation Court; or (2) if the parties cannot agree, then at any time after six months from the date of the agreement or award, an application may be made by either party on the ground of increase or decrease of incapacity due solely to the injury . . . .

[8-10] To obtain a modification of an award, an applicant must prove, by a preponderance of evidence, that the increase or decrease in incapacity was due solely to the injury resulting from the original accident. *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013). To obtain a modification of a prior award, the applicant must prove there exists a material and substantial change for the better or worse in the condition—a change in circumstances that justifies a modification, distinct and different from the condition for which the adjudication had been previously made. *Id.* Whether an applicant's incapacity has increased under the terms of § 48-141 is a finding of fact. *Rader v. Speer Auto, supra.*

The Appellant argues that because the record shows Kirkland has had ongoing right knee pain, right knee popping, and an altered gait since the time of the July 2008 accident, he failed to prove that his right knee condition at the time of the 2017 trial was distinct and different from and materially worse than his condition at the time of the prior trials. The Appellant also argues that Steier's causation opinion, which the court relied on, was insufficient.

[11-14] Although a claimant's medical expert does not have to couch his or her opinion in the magic words "reasonable medical certainty" or "reasonable probability," the opinion must be sufficient to establish the crucial causal link between the claimant's injuries and the accident occurring in the course and scope of the claimant's employment. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). An appellate court examines the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole.

*Id.* The Workers' Compensation Court is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony. *Id.* Resolving conflicts within a health care provider's opinion rests with the Workers' Compensation Court, as the trier of fact. *Id.*

The record shows that Kirkland has complained of right knee pain and popping since the July 2008 accident, but that his left knee symptoms were initially worse. The record also shows that after Kirkland's left knee replacement surgery, he relied primarily on his right knee to support him, stressing it to the point that Pitner recommended right knee replacement surgery in 2016. The record shows that prior to Pitner's recommendation, no doctor had recommended replacement surgery for Kirkland's right knee.

The compensation court relied on Steier's causation opinions to find Kirkland suffered a material and substantial change in his physical condition for the worse due solely to the injuries suffered by him in the 2008 accident. The court specifically found that "[Kirkland's] right knee injury was caused by his altered gait and weight bearing caused by the original injuries."

[15] If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015). Considering the evidence in the light most favorable to Kirkland and examining Steier's statements from his collective opinions and the record as a whole, we find the record supports the compensation court's determination that Kirkland suffered a material and substantial change in his physical condition for the worse due solely to the injuries he suffered in the July 2008 accident. The injury to Kirkland's right knee, at the time of the instant modification, was distinct and different from the injuries compensated in the prior awards. The fact

that Kirkland complained of some right knee issues before the prior awards does not preclude this finding as the condition of the right knee at the time of the instant modification had progressed to require a total replacement.

[16,17] However, our analysis under § 48-141 does not end there. To establish a change in incapacity under § 48-141, an applicant must show a change in impairment and a change in disability. *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013); *Jurgens v. Irwin Indus. Tool Co.*, 20 Neb. App. 488, 825 N.W.2d 820 (2013); *Bronzynski v. Model Electric*, 14 Neb. App. 355, 707 N.W.2d 46 (2005). A change in impairment refers to the employee's physical condition or health status. See, *Rader v. Speer Auto, supra*; *Bronzynski v. Model Electric, supra*. Disability, on the other hand, is defined in terms of employability and earning capacity rather than loss of bodily function. See, *Rader v. Speer Auto, supra*; *Wolfe v. American Community Stores*, 205 Neb. 763, 290 N.W.2d 195 (1980); *Bronzynski v. Model Electric, supra*. In a workers' compensation context, impairment refers to a medical assessment, whereas disability relates to employability. *Rader v. Speer Auto, supra*; *Jurgens v. Irwin Indus. Tool Co., supra*.

In *Rader v. Speer Auto, supra*, the employee submitted evidence showing that he had experienced a slight increase in his loss of earning power since an earlier award. The trial court found that although the employee experienced an additional loss of earning power, this loss of earning power alone did not serve to establish a material and substantial change for the worse in her condition as required by § 48-141(2). On appeal, the Nebraska Supreme Court affirmed the denial of modification under § 48-141. The Supreme Court first noted that although there were competing loss of earning power opinions, the trial judge was entitled to accept the opinion of one expert over another. The Supreme Court then noted, however, that with respect to impairment, there was expert evidence to show that the employee did not experience a material or substantial change in her condition. The Supreme Court

concluded that although the finding of a modest increase in the employee's loss of earning capacity supported a worsening of disability, the record as a whole failed to establish a worsening of impairment, and that thus, the trial court's finding that the employee did not prove an increase in incapacity under § 48-141 was not clearly wrong.

In this appeal, we are presented with the opposite scenario than that existing in *Rader v. Speer Auto, supra*. Here, the trial court found a substantial change in Kirkland's physical condition; in other words, a worsening of his impairment. However, the trial court did not address the second prong of § 48-141—a change in disability. Presumably, this prong was not addressed below because Kirkland was already found to be permanently totally disabled in the 2011 further award. Nevertheless, we cannot ignore the requirement that an employee show both a change in impairment and a change in disability before being entitled to a modification under § 48-141. Nor are we aware of any exceptions under § 48-141 to the requirement of proving an increase in disability in cases where a worker is already at permanent total disability. Obviously, there was no evidence adduced in this case regarding an increase in disability because Kirkland was already found to be totally disabled. Because Kirkland failed to establish a worsening of disability, it was clear error for the trial court to find that he suffered an increase in incapacity under § 48-141.

Although the trial court erred in finding an increase in incapacity to support modification under § 48-141, this does not necessarily end our inquiry. In his petition to modify, Kirkland alleged a material and substantial change in his condition to support modification under § 48-141, but he also alleged that the 2011 further award provided for future medical care and treatment, that he now required a total knee arthroplasty, and that this change was due to his compensable injuries. The relief sought in the petition was an order requiring the Appellant to comply with the 2011 further award by paying

for the treatment necessary to address his work-related condition—the right knee total arthroplasty. This is the relief that the trial court granted, albeit under a § 48-141 finding, which we have determined to be in error.

An award of future medical treatment may include treatment which becomes reasonably necessary only after entry of the award. See, *Sellers v. Reefer Systems*, 283 Neb. 760, 811 N.W.2d 293 (2012); *Pearson v. Archer-Daniels-Midland Milling Co.*, 282 Neb. 400, 803 N.W.2d 489 (2011). The question becomes whether the requested treatment is necessary to treat the employee's work-related injuries. See *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005). If the necessity of the treatment has been established, it may be compensable notwithstanding the fact that it was not specifically included in the award of future medical benefits. See *Sellers v. Reefer Systems, supra*.

The foregoing cases regarding future medical treatment are generally premised upon Neb. Rev. Stat. § 48-120 (Cum. Supp. 2016) (award of medical expenses) rather than § 48-141. An employee may file a motion to compel payment of medical expenses following an award of future medical expenses. See *Zitterkopf v. Aulick Indus.*, 16 Neb. App. 829, 753 N.W.2d 370 (2008) (employee previously awarded permanent total disability and future medical expenses obtained order compelling employer to pay for medication necessary to address reaction to pain medication).

Here, although the compensation court found that Kirkland was precluded under the doctrine of res judicata from claiming he sustained an injury to his right knee in the 2008 accident, a finding that Kirkland does not challenge on appeal, the court further found that Kirkland was not precluded from proving that his right knee injury stems from the injuries found to be suffered in the 2008 accident. This finding is consistent with *Sellers v. Reefer Systems, supra*; *Pearson v. Archer-Daniels-Midland Milling Co., supra*; and *Rodriguez v. Hirschbach Motor Lines, supra*.

Because we conclude that the trial court erroneously premised its award of medical bills for the right knee treatment upon § 48-141, we must reverse its decision. However, because the court did not specifically address Kirkland's request to compel payment of these expenses under the further award, we remand the cause for further proceedings consistent with this opinion.

## CONCLUSION

The compensation court was clearly wrong in finding that Kirkland suffered an increase in incapacity under § 48-141. We reverse the March 29, 2017, further award and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.