IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ULRICH V. ARJO-CENTURY DISTRIBUTING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DOUGLAS ULRICH, APPELLANT,

V.

ARJO-CENTURY DISTRIBUTING, INC., APPELLEE.

Filed May 9, 2023.    No. A-22-656.

Appeal from the Workers' Compensation Court: JAMES R. COE, Judge. Affirmed.

Terrence J. Salerno, of Salerno & Leavitt, for appellant.

Dennis R. Riekenberg and Michael R. Faz, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## I. INTRODUCTION

Douglas Ulrich received injuries in a work-related accident while employed by Arjo-Century Distributing, Inc. (Arjo). He then suffered a second nonwork-related accident. The Nebraska Workers Compensation Court entered an award in Ulrich's favor, but it limited his recovery of medical expenses to those incurred through the date of the second accident. Ulrich appeals, assigning error to the court's finding that certain medical expenses incurred following the second accident were not recoverable. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

### 1. EMPLOYMENT

At the time of his work-related accident and injury, Ulrich was employed by Arjo as a certified service technician with specialized training in certain products used in hospitals, nursing

- 1 -

homes, and some in-home care facilities. He sold service contracts and his job required him to travel to facilities to perform maintenance and repair work. He was injured in a work-related vehicle accident on April 7, 2017. Subsequently, on September 27, 2018, he was involved in a second nonwork-related vehicle accident. At some point, Ulrich was fired by Arjo.

## 2. PETITION

On August 3, 2018, Ulrich filed a petition in the compensation court seeking benefits. Ulrich alleged a work-related accident occurring on or about April 7, 2017, and resulting in injury to his low back with right leg pain, neck pain, upper back pain with numbness to right hand, and bilateral shoulder pain. Ulrich alleged that the matters in dispute were the extent of his disability, entitlement to additional medical care and treatment, payment of medical bills, temporary total and permanent partial disability benefits, and other benefits as allowed by the Nebraska Workers' Compensation statutes.

## 3. TRIAL

Trial was held before the compensation court on June 8, 2022. The court heard testimony from Ulrich, and it received numerous medical records, bills, and other documentary exhibits offered by the parties, including documents filed in the district court litigation over the second accident (Ulrich's complaint, his answers to interrogatories filed by the defendant, and a release of claims and indemnity agreement document). We have summarized only the evidence relevant to the issues on appeal.

### (a) April 2017 Accident and Subsequent Treatment

On April 7, 2017, Ulrich was driving his work van when another individual "drove right out in front of [him]," forcing him to turn and brake his van to avoid a collision. Ulrich's van went off the road and skidded into a ditch or depression before stopping. He described the process of driving into the ditch as involving "sudden impacts" and stated that the van "bounced" multiple times before coming to a stop. Ulrich went to the emergency room where he was diagnosed with "lumbar muscle pain" and discharged with medication. An x ray of Ulrich's lumbar spine was "negative."

On April 12, 2017, Ulrich saw his primary care physician, Dr. Paul Mueller, complaining of back pain radiating down to the right calf along with bilateral trapezius pain radiating down to an area between the shoulder blades as well as into both arms. Mueller noted that Ulrich's symptoms were consistent with "muscular low back pain in the right parathoracic and right paralumbar area except for some pain that radiates down the right leg which could be a radicular sign." And, he noted that Ulrich's bilateral trapezius muscle pain was consistent with "whiplash injury," although the pain radiating into his arms and tingling in his fingers could be "a sign of radiculopathy." Mueller prescribed physical therapy and medication. Mueller's office notes for follow-up visits on April 28, May 12, May 26, and June 9, include references to on-going low back, radiating into his right leg, and bilateral trapezius pain between his shoulder blades, radiating into both arms, as well as mid back thoracic pain.

Following the May 26, 2017, visit, Mueller scheduled an MRI. The lumbar MRI, completed in June, showed degenerative changes; neither the lumber nor the cervical MRI showed

any "specific areas of foraminal narrowing or spinal stenosis." The MRIs did not show anything to explain Ulrich's upper and lower extremity symptoms. Mueller then referred Ulrich to Dr. Zachary Gustin, a physical medicine doctor.

On July 5, 2017, Ulrich saw Gustin for an initial evaluation. Gustin ordered thoracic imaging, physical therapy, and an epidural injection. On July 10, Ulrich's physical therapist noted inconsistencies regarding his movement patterns and report of pain. Gustin gave Ulrich an epidural injection on July 14, but because Ulrich showed no significant improvement, Gustin did not recommend a repeat injection. When examining Ulrich during an August 9 follow-up visit, Gustin noted "[e]xquisite tenderness to palpation, somewhat exaggerated to the level of pressure use" and an improvement in his tenderness with distraction. In strength testing, Gustin observed Ulrich to exhibit "a ratchet weakness with give way weakness pattern" that improved with coaching and distraction. Gustin also noted the results from the ordered imaging of Ulrich's thoracic spine ("[n]ormal dorsal spine" shown by x rays and "[m]inimal degenerative disc disease" shown by MRI) and his lack of significant gains through physical therapy. Gustin placed Ulrich at maximum medical improvement (MMI) as of August 9 and referred him for a functional capacity evaluation (FCE).

The results of the August 18, 2017, FCE were borderline valid with evidence of overt symptom/disability exaggeration; it also noted that Ulrich's movement patterns and behavior were consistent with the symptoms and disability. In his notes from a September 1 office visit, Gustin adopted the recommendations of the FCE that Ulrich was able to work at the light physical demand level for an 8 hour day with certain restrictions.

After a follow-up visit on November 27, 2017, Gustin again did not recommend further injections, and he opined that Ulrich's MMI date and restrictions remained the same. At that time, Ulrich still complained of severe back and buttock pain. He was also still experiencing neck pain, numbness, and tingling. Ulrich saw Gustin again on May 24, 2018, at which time Gustin noted that Ulrich's pain was "relatively stable, perhaps slightly improved," that he had some intermittent "short-lived" aggravations with "overactivity and lifting," and that he had been able "to manage his aggravations relatively well with avoidance of overactivity and activity modification."

Ulrich had a follow up visit with Mueller on August 3, 2018. In his office notes from the August 3 visit, Mueller noted right shoulder pain "which has been persisting for some time now and may have become lost in all the workup for neck pain and arm pain, thoracic back pain, and low back pain." Mueller noted the difficulty in distinguishing Ulrich's "radiating pain" from pain "actually in the shoulder," but he found, upon examination of the right shoulder, "some possible rotator cuff signs." Ulrich's last visit with Mueller prior to the second accident was on September 14.

### (b) Vocational Rehabilitation

Ulrich participated in a vocational rehabilitation plan to obtain an associate's degree in business management between the two accidents. His schooling ended after the September 2018 accident. Ulrich sent an email to his vocational rehabilitation counselor on October 1, stating that his "back shoulder leg neck pretty much everything [was] hurting a lot worse."

(c) September 2018 Accident and Subsequent Treatment

On September 27, 2018, Ulrich was involved in a second motor vehicle accident. In his complaint filed in the resulting litigation in district court, Ulrich alleged that he was stopped behind traffic at an intersection due to a red traffic signal and that the defendant in that litigation, who failed to see the stopped traffic, "crashed his vehicle into the rear end of [Ulrich's] vehicle" and then "struck [Ulrich's vehicle] a second time." Ulrich alleged that as a result of that accident, he sustained injuries, including "neck[,] shoulder, and mid-back pain, and lower back pain," some of which had required surgical intervention. He also alleged that his medical costs to date had been $25,209, that some of his injuries were permanent and would require ongoing medical care and treatment, and that he had been unable to work, resulting in lost earnings. In answers to interrogatories from the defendant in the district court case asking him to describe the injuries for which he was claiming damages, Ulrich responded that he "sustained an injury to his lower back which necessitated surgical intervention," "also required shoulder surgery to repair damage suffered in the collision of 9-27-2018," and "continue[d] to treat for neck pain which ha[d] necessitated injections and physical therapy." In response to an interrogatory asking him to describe every item or element of special or monetary damages, Ulrich provided an itemized list of bills incurred through January 28, 2020, totaling $188,508.41, including bills for the first shoulder surgery and the first back surgery discussed below. Ulrich resolved the district court case with the driver that hit his vehicle in September 2018 by release for the sum of $350,000.

After the September 2018 accident, Ulrich saw Mueller again on October 1, at which time Mueller noted with respect to Ulrich's lower back:

This is a very complicated case in this individual who has been having chronic low back pain with pain radiating down the right leg for one and [a] half years after a prior accident which occurred on his job. . . . He now has worsened low back pain and continued pain down the right leg which is worsened after this most recent motor vehicle accident.

With respect to right shoulder pain, Mueller again characterized Ulrich's situation as "a very complicated case," noting that Ulrich did have some right shoulder pain before the most recent accident, which had increased after the 2018 accident. Mueller noted that Ulrich also had "positive rotator cuff signs" and stated that he would "re-accomplish an orthopedic consult." Mueller also noted an exacerbation of Ulrich's chronic right sided neck pain radiating down his right arm.

On November 12, 2018, Ulrich saw Dr. Thomas Brooks, for pain management, with his chief complaint being "Back Pain, Leg Pain, Neck Pain." Brooks' notes from that visit contain a reading of an October 9 MRI of Ulrich's lumber spine, which showed "[d]egenerative changes at L5-S1 left greater than right, increased from the previous [MRI]" of June 2017. Brooks noted that, given Ulrich's history and physical exam "the greatest pain generator is likely bilateral sacroiliac joints," and that he would plan to administer injections. Ulrich continued treating with Brooks until May 27, 2020, during which time Brooks provided various joint injections, nerve blocks, and other treatments.

On November 27, 2018, Ulrich was seen by Dr. Daniel Surdell for a neurosurgical evaluation. At that time, Ulrich reported that following the second accident, his back pain had increased by double or higher. Surdell performed two back surgeries on Ulrich, an L5-S1 fusion

on March 25, 2019, and a revision surgery on November 16, 2020. In his check-the-box medical report of January 2022, he attributed the need for the back surgeries to the work-related 2017 accident.

Ulrich also sought further evaluation of his shoulder complaints following the second accident. In October 2018, he was seen by Dr. John Uggen, who eventually performed surgery on Ulrich's right shoulder on June 5, 2019. Another surgeon, Dr. Matthew Delisio, performed an additional surgery on Ulrich's right shoulder on April 6, 2021.

On April 7, 2020, between the dates of his two shoulder surgeries, Ulrich was also evaluated by Dr. John Hain for complaints of neck and back pain. On April 10, after reviewing a CT scan and MRI of Ulrich's lumbar and thoracic spine, Hain noted "no recommendation for surgical intervention at this time."

(d) Independent Medical Examination and Causation Reports

Arjo requested an independent medical examination of Ulrich, which took place on February 7, 2022. Ulrich was examined by Dr. Geoffrey McCullen, a spine neurosurgeon, and Michael Koebernick, a physician's assistant. Based upon the physical examination and his extensive medical record review, McCullen opined that the April 2017 work-related accident "caused a cervical, thoracic, and lumbar strain" and that there were "no spine surgical procedures for the cervical, thoracic or lumbar diagnoses related to [that accident]." McCullen agreed with Gustin's imposition of MMI for the work-related accident as of August 2017 and, for "the spine diagnoses related to the [April 2017] accident" imposed a 9-percent impairment rating "of the whole person." McCullen also agreed with the permanent restrictions with respect to the work-related accident as identified in the August 2017 FCE report. As to future medical care resulting from the work-related accident, McCullen opined that Ulrich required only medication management. McCullen opined the September 2018 accident was "a significant contributing factor to [Ulrich's] present and ongoing neck and back complaints." He noted that after the 2018 accident, medical records indicated "a significant escalation of symptoms with worsening of the pre-existing condition and expansion of complaints with the development of new left sided arm and leg symptoms," which led to "subsequent evaluations and invasive neck and back procedures including surgery and pain management injections."

Gustin also performed a medical records review and physical examination of Ulrich at Arjo's request. In his report of April 15, 2022, after noting the medical records and imaging reports he reviewed and detailing Ulrich's accident-related medical history, as well as the results of his April 5 examination of Ulrich, Gustin proceeded to answer various questions put to him by Arjo. Despite Ulrich's assertions on appeal that Gustin revised his opinion as to Ulrich's date of MMI with respect to the April 2017 work-related accident, Gustin responded in his April 2022 report, "Yes, [Ulrich] has achieved maximum medical improvement [] for his work-related accident as of 8/9/2017, when he was initially found to be at MMI." And, he stated, "The above MMI date, 8/9/2017, corresponds to all of his injuries arising out of the April 7, 2017 work accident."

Gustin did modify his previous view that surgical intervention for Ulrich's low back pain was not necessitated by the 2017 work-related accident, something he wrote about at length in his April 2022 report and characterized as "complicated." Gustin stated:

Due to ongoing severe right low back and radiating right leg pain complaints documented at every medical visit up until roughly 2 weeks prior to his second MVA, the medical treatment that then transpired over the next several months, ultimately culminating in 2 spine surgeries with [Surdell], are therefore attributable to the April 7, 2017 work accident, not the September 27, 2018 motor vehicle accident.

(Emphasis in original.) Gustin stated further, "In the setting of these events [documented complaints of low back pain prior to second accident], I do feel that [Ulrich's] first and second spine surgeries did represent reasonable and necessary medical care for injuries attributable to the April 7, 2017 work accident, not the September 27, 2018 motor vehicle accident."

With respect to additional treatment for Ulrich's low back pain and the causation for his current pain complaints, Gustin opined, "[T]he ongoing injections provided by [Brooks] were ultimately reasonable and necessary medical care for injuries attributable to the April 7, 2017 work accident, and not the September 27, 2018 motor vehicle accident." And, Gustin concluded, "Ulrich's present complaints include ongoing severe neck pain, scapular/thoracic pain, right shoulder pain, and low back pain with radiation down his right leg. None of these present complaints are attributable to the September 27, 2018 motor vehicle accident."

Gustin did not attribute Ulrich's need for his shoulder surgeries to either the 2017 or 2018 accident. In his April 2022 report, Gustin noted that Ulrich visited Mueller on five separate occasions before August 3, 2018, and had five visits with him before the second accident and made "no mention of right shoulder pain at any of those visits either." Gustin stated, "[f]or the patient to start complaining of right shoulder pain well over a year after his work-related accident, and then claim it was due to the accident . . . does not suffice as direct causation." He stated further, "I believe [Ulrich's] complaints of right shoulder pain are not causally related to the work-related accident on April 7, 2017." Gustin noted the degenerative changes shown in an MRI of Ulrich's right shoulder taken on October 18, 2018, and he stated, "These AC joint degenerative changes are extremely common and are degenerative in nature, not usually attributable to any specific trauma. The medical records indicate that [Ulrich] simply began developing right shoulder pain like most people, unrelated to any specific motor vehicle accident." And, based on the documented complaints of right shoulder pain prior to the second accident, Gustin concluded that "it is clear that [Ulrich's] right shoulder pain is not attributable to the motor vehicle accident on September 27, 2018."

4. AWARD

On August 11, 2022, the compensation court entered an award of benefits to Ulrich. After setting forth a detailed recitation of the evidence, the court found, based on the evidence, that the only physical or emotional injuries Ulrich suffered as a result of the April 2017 work-related accident were a cervical, thoracic, and lumbar strain. The court found that "all of [Ulrich's] surgical procedures and continuing need for care" were the result of the nonwork-related second accident of September 2018. The court found persuasive the report of McCullen that Ulrich did not suffer "any need for surgical procedures" as a result of the April 2017 accident and the report of Gustin that Ulrich's "right shoulder and rotator cuff surgeries" were not related to the 2017 accident. The court noted its thorough review of all of the medical evidence and stated, "Suffice it to say that

- 6 -

there is evidence that would support or detract from any position that either of the parties wishes to take. Be that as it may, the Court is more persuaded by the indicated medical evidence above than differing medical evidence." The court also found "serious issues of credibility" with respect to Ulrich's trial testimony about the 2018 accident, which characterized that accident as a nonevent where "nothing happened," when contrasted with the claims he made in the district court case with respect to injuries sustained in that accident and the monetary sum for which those claims were resolved. Accordingly, the court found by a preponderance of the evidence that the majority of Ulrich's claim for damages was the result of the 2018 accident rather than the 2017 work-related accident.

The compensation court awarded Ulrich specified periods of temporary total disability and found he sustained a 55-percent loss of earning capacity. The court found Arjo responsible for only those itemized medical bills that existed prior to September 27, 2018, ordered it to pay any such outstanding bills as itemized in a particular exhibit, and gave it credit for such bills as it had previously paid. The court found Ulrich was entitled to vocational rehabilitation as specified in the award and that Arjo was entitled to a credit of $19,808.56 against any future indemnity owed to Ulrich from the 2017 accident as a result of his settlement of his third party claim against Arjo's workers' compensation insurance carrier. And, the court found that Ulrich was entitled to future medical expenses as identified in McCullen's report of February 7, 2022, for the 2017 accident for medications which might be reasonably necessary, together with periodic evaluations. A nunc pro tunc order was entered on August 24, 2022, correcting certain dates in the original award. Ulrich subsequently perfected his appeal to this court.

## III. ASSIGNMENTS OF ERROR

Ulrich asserts, consolidated and restated, that the compensation court erred in (1) concluding that his back surgeries, shoulder surgeries, and pain management, occurring after the second accident, were not causally related to his first accident; (2) assuming McCullen's opinions and conclusions were factually based, reliable, and probative of the facts in issue; and (3) relying on Gustin's opinion regarding Ulrich's shoulder surgery and the lack of any causal relationship to the first accident.

## IV. STANDARD OF REVIEW

Under Neb. Rev. Stat. § 48-185 (Reissue 2021), a judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Lewis v. MBC Constr. Co.*, 309 Neb. 726, 962 N.W.2d 359 (2021). On appellate review, the factual findings made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.*

## V. ANALYSIS

### 1. ADMISSION OF EVIDENCE REGARDING SETTLEMENT OF SECOND ACCIDENT

Before turning to Ulrich's arguments with respect to his assigned errors, we first address the final argument section of Ulrich's brief, in which he argues that the compensation court erred in admitting evidence of his settlement of litigation over the second accident, in particular, "Exhibit 42 and the questions regarding that litigation." Brief for appellant at 24. At trial, Ulrich's attorney objected to the offer of exhibit 42 as irrelevant. Arjo's attorney argued that it was relevant because in the district court lawsuit over the second accident, Ulrich sought recovery for "the exact medical expenses" for which he was seeking recovery in the compensation court. The compensation court overruled Ulrich's objection, finding the exhibit relevant. Because Ulrich did not assign error to the admission of exhibit 42, we will not consider his arguments about it further. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Webber v. Webber*, 28 Neb. App. 287, 942 N.W.2d 438 (2020).

### 2. SUFFICIENT COMPETENT EVIDENCE

Ulrich assigns that the compensation court erred in concluding that his back surgeries, shoulder surgeries, and pain management, occurring after the second accident, were not causally related to his first accident. He argues that the court erred in relying on the opinions of McCullen and Gustin in reaching this conclusion.

To recover workers' compensation benefits, an injured worker is required to prove by competent medical testimony a causal connection between the alleged injury, the employment, and the disability. *Contreras v. T.O. Haas*, 22 Neb. App. 276, 852 N.W.2d 339 (2014). Unless its nature and effect are plainly apparent, an injury is a subjective condition requiring an expert opinion to establish the causal relationship between the employment and the injury or disability. *Kaiser v. Metropolitan Util. Dist.*, 26 Neb. App. 38, 916 N.W.2d 448 (2018). Although expert medical testimony in workers' compensation cases must be based on a "reasonable degree of medical certainty" or "reasonable probability," the testimony need not be couched in those exact, magic words. *Contreras v. T.O. Haas, supra*. The sufficiency of an expert's opinion is judged in the context of the expert's entire statement. See *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017). The value of an expert witness' opinion is no stronger than the facts upon which it is based. *Id.*

### (a) Reliance on McCullen's Opinion

Ulrich challenges the compensation court's reliance on McCullen's report following his independent medical examination in concluding that Ulrich's back surgeries were not related to his work accident of 2017. Ulrich argues that McCullen's report does not show he was given notes from Ulrich's visits to Mueller in August and September 2018 just prior to the second accident or Gustin's opinions about MMI as outlined in Gustin's April 2022 report. Ulrich argues, "The date when Ulrich reached MMI was a significant fact that formed the basis for critical portions of [McCullen's] opinions. Unfortunately, [McCullen] used a date referenced in the Gustin records

that [Gustin] no longer believed was applicable to Ulrich's medical situation." Brief for appellant at 20. He argues further that McCullen's opinions were predicated on Gustin's initial determination that Ulrich reached MMI on August 9, 2017, and since that no longer reflected Gustin's opinion in 2022, McCullen's conclusions with respect to the causal connection between Ulrich's spine surgeries and his April 2017 work accident were factually inaccurate and lacked probative value.

McCullen clearly conducted a thorough review of Ulrich's medical records. The fact that notes from two of Ulrich's visits to Mueller were not referenced in McCullen's report is not indicative of whether McCullen did or did not review those notes. The medical records specifically identified in McCullen's report and the statements in his report, indicate his awareness of Ulrich's ongoing spine complaints beyond the point when Gustin placed Ulrich at MMI. And, we do not read Gustin's April 2022 report as a revision of his opinion with respect to MMI as suggested by Ulrich. In his April 2022 report, Gustin reaffirmed his belief that Ulrich had reached MMI in August 2017; Gustin revised his opinion as to whether Ulrich's back surgeries were necessitated by the 2017 work accident.

The trial judge in a workers' compensation case is entitled to accept the opinion of one expert over another. *Michie v. Anderson Builders*, 22 Neb. App. 731, 859 N.W.2d 906 (2015). And, if the record contains evidence to substantiate the factual conclusions reached by the trial judge of the compensation court, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Eddy v. Builders Supply Co.*, 304 Neb. 804, 937 N.W.2d 198 (2020). We find no error in the compensation court's reliance on McCullen's opinion that Ulrich did not require surgical procedures as a result of the 2017 accident.

(b) Reliance on Gustin's Opinion

Ulrich also challenges the compensation court's reliance on Gustin's opinion that his shoulder surgeries were not causally connected to his 2017 work accident. He argues that Gustin overlooked documentation in Mueller's records that noted right shoulder pain radiating into the upper arms and forearms. He argues that Gustin's "assumption that the shoulder was not a pain source following the April 2017 work-related accident is factually incorrect." Brief for appellant at 22. It is clear that Gustin conducted a thorough review of the medical records, including those of Mueller, in reaching the opinions expressed in his April 2022 report and that his opinion was sufficient to support the compensation court's conclusion with respect to the causation of Ulrich's shoulder surgeries. An appellate court examines the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole. *Moss v. C&A Indus.*, 25 Neb. App. 877, 915 N.W.2d 615 (2018). It is the role of the compensation court as the trier of fact to determine which, if any, expert witnesses to believe. *Arroyo v. Caring for People Servs.*, 29 Neb. App. 93, 952 N.W.2d 11 (2020). Where the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Id.*

Viewing the evidence in a light most favorable to Ulrich, we cannot conclude that the compensation court was clearly erroneous in finding that McCullen's and Gustin's opinions were sufficient to establish that Ulrich's surgeries and pain management treatment following the second accident were not causally related to his first accident.

## VI. CONCLUSION

The compensation court did not err in relying on the opinions of McCullen and Gustin in concluding that Ulrich back surgeries, shoulder surgeries, and pain management, occurring after the second accident, were not causally related to his first accident.

AFFIRMED.