Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/17/2023 09:05 AM CST

Paulina Espinoza, appellant, v.
Job Source USA, Inc., appellee.

___ N.W.2d ___

Filed February 17, 2023.    No. S-22-207.

1. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2021), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2. ____: ____. Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact that are clearly wrong in light of the evidence.

3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law that an appellate court resolves independently of the trial court.

4. **Statutes: Legislature: Presumptions: Judicial Construction.** When the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation and the decisions of the Supreme Court construing and applying that legislation.

5. **Statutes.** A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless.

6. **Workers' Compensation.** The Nebraska Workers' Compensation Act should be construed liberally to carry out its spirit and beneficent purpose of providing compensation to employees injured on the job.

Appeal from the Workers' Compensation Court: J. Michael Fitzgerald, Judge. Reversed and remanded for further proceedings.

Steven H. Howard, of Steve Howard Law, for appellant.

Eric T. Lanham and Sarah N. Boston, of McAnany, Van Cleave & Phillips, P.A., for appellee.

Danny C. Leavitt, of Salerno & Leavitt, for amicus curiae Nebraska Association of Trial Attorneys.

Dallas D. Jones, Eric J. Sutton, and Makenzie K. Falcon, of Baylor Evnen, L.L.P., for amicus curiae Nebraskans for Workers' Compensation Equity and Fairness et al.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Paulina Espinoza fell at work and injured her right wrist and right elbow. In her subsequent claim for benefits, she asserted that because she suffered a "loss or loss of use of more than one member or parts of more than one member," the Workers' Compensation Court should consider awarding her benefits based on her loss of earning capacity pursuant to the third paragraph of Neb. Rev. Stat. § 48-121(3) (Reissue 2021). The Workers' Compensation Court concluded that a claimant who sustains injuries along the same extremity sustains an injury to a single member and that it thus lacked authority to consider such an award. Espinoza argues on appeal that the compensation court's decision was based on an incorrect interpretation of § 48-121(3). We agree and thus reverse the award of the compensation court and remand the cause for further proceedings.

## BACKGROUND

*Espinoza's Injury and Claim.*

Espinoza's employer, Job Source USA, Inc. (Job Source), assigned her to work at a bakery. One day in March 2019, while working at the bakery, Espinoza was struck by a door and fell down four steps, fracturing her right wrist and right elbow. Espinoza underwent surgery on both. She later reached maximum medical improvement.

The doctor who treated Espinoza's hand injuries concluded that Espinoza's hand and wrist injuries resulted in a 9-percent impairment of her right hand. Another doctor who performed an independent medical examination on Espinoza concluded that her elbow injuries resulted in an additional 5-percent impairment to the "upper extremity."

Espinoza filed a petition in the Workers' Compensation Court. From the beginning of the case, Espinoza took the position that she was entitled to an award of permanent disability benefits based on her loss of earning capacity. Job Source disagreed. Some statutory background is helpful to understanding the parties' dispute. Accordingly, we review it here.

The statute at the heart of the parties' dispute is § 48-121. The introductory language of § 48-121 provides that "[t]he following schedule of compensation is hereby established for injuries resulting in disability." As we have previously explained, the first three subdivisions of that statute address three different categories of disability and set methods of determining compensation for each. See, *Rodgers v. Nebraska State Fair*, 288 Neb. 92, 846 N.W.2d 195 (2014); *Jeffers v. Pappas Trucking, Inc.*, 198 Neb. 379, 253 N.W.2d 30 (1977). Subdivision (1) addresses compensation for total disability; subdivision (2) addresses compensation for partial disability, except in cases covered by subdivision (3); and subdivision (3) lists the compensation that is to be paid for injuries to several specified parts of the body. See *Rodgers, supra*.

Historically, a claimant's loss of earning capacity was relevant to awards governed by § 48-121(1) and (2). See *Rodgers,*

*supra*. Awards governed by § 48-121(3), on the other hand, were not historically based on loss of earning capacity. See *Smith v. Mark Chrisman Trucking*, 285 Neb. 826, 829 N.W.2d 717 (2013). Section 48-121(3) instead "provide[d] for compensation based on designated amounts for scheduled member injuries, but no loss of earning capacity." *Smith*, 285 Neb. at 830, 829 N.W.2d at 720.

In 2007, the Legislature enacted an amendment to § 48-121(3). That amendment added the following language, which is now codified as the third paragraph of § 48-121(3):

> If, in the compensation court's discretion, compensation benefits payable for a loss or loss of use of more than one member or parts of more than one member set forth in this subdivision, resulting from the same accident or illness, do not adequately compensate the employee for such loss or loss of use and such loss or loss of use results in at least a thirty percent loss of earning capacity, the compensation court shall, upon request of the employee, determine the employee's loss of earning capacity consistent with the process for such determination under subdivision (1) or (2) of this section, and in such a case the employee shall not be entitled to compensation under this subdivision.

As we have summarized the amendment, it "provides for the loss of earning capacity at the court's discretion where there is a loss or loss of use of more than one member which results in at least a 30-percent loss of earning capacity." *Smith*, 285 Neb. at 830, 829 N.W.2d at 720.

In this case, Espinoza sought an award based on loss of earning capacity under the language added to § 48-121(3) in the 2007 statutory amendment. She claimed that because she sustained injuries to both her hand and arm, the compensation court could consider an award based on loss of earning capacity. Job Source countered that because Espinoza's injuries occurred along the same extremity, the compensation court lacked discretion to consider an award based on loss of earning capacity.

At trial, Espinoza offered evidence of the medical opinions regarding her impairment described above. The parties stipulated that Espinoza would be entitled to benefits for a 13-percent loss of use of her arm if the compensation court declined to enter an award based on loss of earning capacity.

*Decision of Compensation Court.*

Following the trial, the compensation court entered an order addressing various issues disputed by the parties. Relevant to this appeal, the compensation court refused to consider an award based on loss of earning capacity. It concluded that "an injury to the wrist and the elbow of the same arm is still an injury to a single member and does not entitle an employee to a loss of earning power." The compensation court also cited our recent decision in *Melton v. City of Holdrege*, 309 Neb. 385, 960 N.W.2d 298 (2021).

Having found that it lacked authority to enter an award based on loss of earning capacity, the compensation court instead, pursuant to the parties' stipulation, awarded Espinoza benefits based on a permanent 13-percent impairment of her arm. Espinoza timely appealed.

## ASSIGNMENT OF ERROR

Espinoza assigns multiple errors on appeal, but they can be effectively condensed and restated as one: She contends that the compensation court erred by concluding that an employee who sustains two injuries along the same extremity could not have sustained a loss or loss of use of more than one member or parts of more than one member for purposes of the third paragraph of § 48-121(3).

## STANDARD OF REVIEW

[1,2] Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2021), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is

not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Interiano-Lopez v. Tyson Fresh Meats*, 294 Neb. 586, 883 N.W.2d 676 (2016). Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact that are clearly wrong in light of the evidence. *Id.*

[3] Statutory interpretation presents a question of law that an appellate court resolves independently of the trial court. *Bogue v. Gillis*, 311 Neb. 445, 973 N.W.2d 338 (2022).

ANALYSIS

Although it takes more than a few lines of text to explain, the issue presented in this appeal is nonetheless narrow. The question is whether an employee who, as a result of the same accident, suffers a partial loss of use to the right hand and partial loss of use to the right arm has suffered a "loss or loss of use of more than one member or parts of more than one member set forth in this subdivision" for purposes of the third paragraph of § 48-121(3), which allows such employees to receive an award based on loss of earning capacity if other requirements are met. To resolve that issue, we must interpret § 48-121(3). As always, statutory analysis begins with the text. See, e.g., *In re Guardianship of Eliza W.*, 304 Neb. 995, 938 N.W.2d 307 (2020). We thus turn to the text and the parties' arguments as to how it should be interpreted.

*Statutory Interpretation.*

Espinoza argues that under the plain language of § 48-121(3), her partial loss of use in her right hand and partial loss of use in her right arm qualify as a "loss or loss of use of more than one member or parts of more than one member set forth in this subdivision." According to Espinoza, both her right hand and her right arm are "member[s] set forth in this subdivision" for purposes of § 48-121(3), because hands and arms are listed in the first paragraph of § 48-121(3) in

which the compensation to be awarded for disabilities to specific parts of the body is set forth. Espinoza goes on to argue that because she suffered a partial loss of use of both one of her arms and of one of her hands, she suffered a loss to "parts of more than one member set forth in this subdivision."

Job Source contests Espinoza's statutory interpretation. It correctly observes that the term "member" is not actually defined by the statute and that the first paragraph of § 48-121(3) does not expressly refer to "members," but rather to "classes" of injuries. For these reasons, Job Source argues, Espinoza is incorrect to assume that the parts of the body specifically listed in the first paragraph of § 48-121(3) are each a "member" for purposes of the third paragraph of § 48-121(3). Amici supporting Job Source's position additionally argue that, because the term "member" is not specifically defined, it should be given its plain and ordinary meaning. Relying on selected dictionary definitions, these amici contend that the term "member" should be interpreted to include only limbs, i.e., arms and legs. As we will explain below, however, there are cogent rejoinders to each of these arguments.

First, although § 48-121(3) does not refer to the body parts listed in its first paragraph as "members," for decades, this court has referred to those listed body parts as "members" or, more specifically, "scheduled members." See, e.g., *Melton v. City of Holdrege*, 309 Neb. 385, 391, 960 N.W.2d 298, 305 (2021) ("scheduled member"); *Madlock v. Square D Co.*, 269 Neb. 675, 679, 695 N.W.2d 412, 415 (2005) ("scheduled member"); *Rodriguez v. Monfort, Inc.*, 262 Neb. 800, 810, 635 N.W.2d 439, 448 (2001) ("[d]isabilities listed under subsection (3), referred to as scheduled member disabilities, are generally compensated according to the amounts provided by statute"); *Nordby v. Gould, Inc.*, 213 Neb. 372, 374, 329 N.W.2d 118, 119 (1983) ("scheduled member"); *Cardenas v. Peterson Bean Co.*, 180 Neb. 605, 609, 144 N.W.2d 154, 157 (1966) ("scheduled member"). Indeed, decisions of this court referring to the body parts listed in the first paragraph of § 48-121(3)

as "members" stretch back to at least 1922. See *Poast v. Omaha Merchants Express & Transfer Co.*, 107 Neb. 516, 519, 186 N.W. 540, 542 (1922) ("[s]ubdivision 3 prescribes a schedule of compensation to be paid for the loss of various members").

[4] This court's consistent references to the body parts listed in the first paragraph of § 48-121(3) as "members" is consequential. One of our familiar principles of statutory interpretation is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that it did so with full knowledge of the preexisting legislation and the decisions of the Supreme Court construing and applying that legislation. *Hauptman, O'Brien v. Auto-Owners Ins. Co.*, 310 Neb. 147, 964 N.W.2d 264 (2021). It is thus fair to presume that when the Legislature added what is now the third paragraph of § 48-121(3) in 2007 and referred therein to a "member set forth in this subdivision," it was aware of our many decisions describing the body parts listed in the first paragraph of § 48-121(3) as members and using the term in the same sense.

[5] Also relevant to the statutory analysis is the fact that the pertinent language does not refer to the term "member" in isolation, but instead to "member set forth in this subdivision." Another of our familiar principles of statutory interpretation holds that a court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *Dean v. State*, 288 Neb. 530, 849 N.W.2d 138 (2014). For the phrase "member set forth in this subdivision" to have effect, the various "members" must be "set forth" somewhere in § 48-121(3). One obvious place in which "members" could be set forth is in the listing of specific body parts in the first paragraph of § 48-121(3). Job Source and the amici supporting its position do not identify another place in § 48-121(3) where the "members" are "set forth."

Finally, to the extent the amici supporting Job Source's position contend that, of the parts of the body listed in the first paragraph of § 48-121(3), only arms and legs qualify as "members," a response is available to that argument as well. While the amici point to selected dictionary definitions of "member" that limit the term to limbs, many other dictionary definitions more broadly define the term to include parts of the body generally. Compare 4 J.E. Schmidt, M.D., Attorneys' Dictionary of Medicine and Word Finder M-113 (1998) ("[a] projecting part of the body, especially a limb"), and Merriam-Webster's Collegiate Dictionary 774 (11th ed. 2020) ("a body part or organ: as a: LIMB"), with Webster's Third New International Dictionary, Unabridged 1408 (1993) ("a bodily part or organ"), and Dorland's Illustrated Medical Dictionary 1006 (28th ed. 1994) ("a part of the body distinct from the rest in function or position"). See, also, *State v. Quintana*, 308 Wis. 2d 615, 748 N.W.2d 447 (2008).

For the reasons we have just discussed, we find that it is at least reasonable to interpret the phrase "loss or loss of use of more than one member or parts of more than one member set forth in this subdivision" to cover a partial loss of use of both the right hand and right arm. Accordingly, the best that Job Source could hope for is a finding that the statute is ambiguous on that question. See *State v. McColery*, 301 Neb. 516, 522, 919 N.W.2d 153, 158 (2018) ("[a] statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way"). As we will explain, however, the identification of statutory ambiguity would not be enough for Job Source to prevail here.

*Resolution of Statutory Ambiguity.*

Although Job Source does not appear to expressly concede that the statutory language at issue is ambiguous, it does make some arguments that appear to be aimed at resolving statutory ambiguity. For example, it places heavy reliance on the

legislative history of the 2007 amendment to § 48-121(3). This court has said that a court may inquire into the legislative history of an ambiguous statute. See, e.g., *McColery, supra*.

The legislative history upon which Job Source relies is primarily statements of senators during a committee hearing and floor debate on the 2007 amendment to § 48-121(3). In the floor debate and committee hearing on the proposed bill, senators posited examples of multiple-member injuries that would qualify for loss of earning capacity benefits under the 2007 amendment. Those included "bilateral carpal tunnel syndrome," Floor Debate, L.B. 588, 100th Leg., 1st Sess. 91 (Apr. 25, 2007); "bilateral shoulder injuries," *id.* at 88; "two broken arms," Business and Labor Committee Hearing, L.B. 588, 100th Leg., 1st Sess. 72 (Feb. 12, 2007); and "two broken legs," *id.* Job Source argues that the fact that the senators referred to only bilateral injuries indicates that the Legislature did not intend for the amended language to cover multiple injuries along the same extremity, as in Espinoza's case.

We are not persuaded. No senator offered a comprehensive definition of which body parts count as "members" for purposes of the 2007 amendment. While the senators noted some examples of multiple-member injuries that would qualify a worker for loss of earning capacity benefits, nothing on the face of the statute or in the legislative history suggests that the senators were setting forth an exhaustive list of all qualifying multiple-member injuries. The portions of the legislative history that Job Source relies upon simply do not shed light on whether an injury to a hand and arm on the same side is an injury to more than one member under § 48-121(3).

We are likewise unconvinced by Job Source's argument that we should interpret § 48-121(3) in the manner it urges based on our recent decision in *Melton v. City of Holdrege*, 309 Neb. 385, 960 N.W.2d 298 (2021). In *Melton*, the claimant's work-related injury required an amputation below the knee and resulted in a loss of function of his leg. Pursuant to language in § 48-121(3) providing that the amputation

below the knee shall be considered as equivalent to the loss of a foot, the compensation court awarded the claimant statutory benefits for 150 weeks for the loss of his foot and an additional 43 weeks of benefits for a 20-percent loss of function to his leg. On appeal, the claimant argued that the compensation court should have awarded him consecutive benefits for the total loss of his leg, the loss of his foot, and the loss of his five toes. We rejected the argument that the claimant was entitled to receive benefits for both the loss of a foot and the loss of toes, acknowledging that "such a loss would include a loss of the toes on the foot," but concluding that "the Legislature limited the loss to the foot." *Id.* at 394, 960 N.W.2d at 306. We also found that the compensation court did not clearly err by compensating the claimant "for the functional loss of his leg that was not already accounted for in the compensation for the loss of his foot." *Id.*

Job Source argues that because the claimant in *Melton* could not obtain benefits for both his foot and his toes, Espinoza cannot claim disabilities to both her hand and arm. We disagree that *Melton* applies here. The claimant in *Melton* sought scheduled benefits under the first paragraph of § 48-121(3), but we concluded that the Legislature, via express language concerning amputations, limited those benefits to those payable for the loss of a foot. In this case, Espinoza is not seeking scheduled benefits under the first paragraph of § 48-121(3), but an award based on loss of earning capacity under the third paragraph of that subdivision. The statutory language concerning amputations does not apply in this case, and we do not discern any similar statutory language requiring that the partial loss of a hand be included within the partial loss of the corresponding arm. Courts are not to read meaning into a statute that is not there. See *Parks v. Hy-Vee*, 307 Neb. 927, 951 N.W.2d 504 (2020).

In addition to legislative history and *Melton*, Job Source also contends that Espinoza's interpretation is unreasonable as a matter of policy. It contends that we should consider

whether Espinoza's interpretation is reasonable as a matter of policy, based on our statements that "[i]n construing a statute it is presumed that the Legislature intended a sensible rather than an absurd result," *Rodriquez v. Prime Meat Processors*, 228 Neb. 55, 65, 421 N.W.2d 32, 39 (1988), and that appellate courts should "reconcile different provisions of the statute[] so they are consistent, harmonious, and sensible," *Rodgers v. Nebraska State Fair*, 288 Neb. 92, 101, 846 N.W.2d 195, 202 (2014). Job Source and its supporting amici contend that Espinoza's interpretation is unreasonable as a matter of policy because it would allow someone who has suffered relatively minor, partial impairments along the same extremity to receive an award based on loss of earning capacity, while a person who has undergone amputation at or above the elbow or knee would not be eligible.

We disagree that we should resolve statutory ambiguity in Job Source's favor based on its argument that Espinoza's interpretation results in an unreasonable policy. Job Source may well be correct that under Espinoza's interpretation, some employees who sustain relatively minor injuries to multiple members will be eligible for an award based on loss of earning capacity while other employees who suffer major injuries to only one member will not be eligible. That, however, is an inherent consequence of the Legislature's decision to make eligibility for an award based on loss of earning capacity dependent on whether there was a loss or loss of use of multiple members, as opposed to a total level of impairment or some other factor. To illustrate, no one involved in this case appears to dispute that an employee who suffered a relatively minor loss of use in both arms would be eligible for a loss of earning capacity award under the third paragraph of § 48-121(3) (if he or she demonstrated the other requirements for such an award), while a worker who suffered a complete loss of use of only one leg would not. See, also, *Rodgers, supra* (reversing and remanding for consideration of award based on loss of earning capacity where there was

undisputed evidence employee had been assigned 2-percent impairment rating for one knee and 40-percent impairment rating for other knee). The fact that one can imagine a hypothetical case in which someone "more injured" than Espinoza will not be eligible for an award based on loss of earning capacity does not meaningfully inform the statutory interpretation question before us.

Moreover, it must be kept in mind that a finding that an employee has suffered a loss or loss of use of more than one member or parts of more than one member does not result in that employee's automatic entitlement to an award based on loss of earning capacity. The injuries of such an employee must also "result[] in at least a thirty percent loss of earning capacity," and, additionally, the compensation court must exercise discretion to determine whether the scheduled member benefits to which he or she would otherwise be entitled "do not adequately compensate the employee." § 48-121(3). Mindful of the foregoing discussion and the fact it is the Legislature's role to set the law and public policy of the state, see *Rogers v. Jack's Supper Club*, 304 Neb. 605, 935 N.W.2d 754 (2019), we do not believe it appropriate to resolve statutory ambiguity based on Job Source's policy arguments.

[6] Not persuaded by the arguments to resolve statutory ambiguity in Job Source's favor, we believe that another canon of interpretation comes into play. We have repeatedly said that the Nebraska Workers' Compensation Act should be construed liberally to carry out its spirit and beneficent purpose of providing compensation to employees injured on the job. *Sellers v. Reefer Systems*, 305 Neb. 868, 943 N.W.2d 275 (2020). See, also, *Spratt v. Crete Carrier Corp.*, 311 Neb. 262, 971 N.W.2d 335 (2022) (tracing canon back to at least 1932). When a workers' compensation statute remains ambiguous after employing traditional tools of statutory interpretation, this canon compels us to interpret the statute liberally to provide compensation to the injured employee. We thus conclude that the compensation court erred by finding that

an employee with multiple injuries along the same extremity could not have suffered a "loss or loss of use of more than one member or parts of more than one member" for purposes of the third paragraph of § 48-121(3). We reverse the award of the compensation court and remand the cause for further proceedings consistent with this opinion.

## CONCLUSION

Because we find that the compensation court erred in its interpretation of § 48-121(3), we reverse the award of the compensation court and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.